(63 App. Div. 442.)

## In re WHITTAKER.

(Supreme Court, Appellate Division, Second Department.　July 25, 1901.)

INTOXICATING LIQUORS—CERTIFICATES—SIGNATURE—FORGERY—EVIDENCE.

> In proceedings to revoke a liquor tax certificate on the ground that the signature of a property owner was a forgery, the owner testified that he had no recollection of having been requested to sign, and that he was a prohibitionist, and was sure he would not sign it, but, on cross-examination, stated that he might have been asked without recollecting it, and that he might have signed it, but did not remember the circumstances; and a witness for the adverse party testified positively to calling on the owner, and that the owner signed in his presence.　No forgery was discoverable by a comparison with known genuine signatures.　*Held*, that a judgment revoking the certificates was erroneous, as against the clear preponderance of the evidence.

Appeal from special term, Kings county.

Petition by Thomas J. Whittaker to revoke the liquor tax certificate issued to Thomas A. Kerby.　From an order revoking the certificate said Kerby appeals.　Reversed.

Argued before GOODRICH, P. J., and HIRSCHBERG, JENKS, and SEWELL, JJ.

Emanuel Newman, for appellant.

Edwin C. Schaffer, for respondent.

SEWELL, J.　The appellant presented to the special deputy commissioner of excise an application for a liquor tax certificate, which stated that there was but one building occupied exclusively as a dwelling within 200 feet of the nearest entrance to the premises where the traffic in liquor was intended to be carried on.　Attached to and filed with the application was a consent in writing that the traffic in liquor be so carried on in such premises, purporting to be signed by Silas W. Albertson, the owner, in the presence of Abram J. Jackson, as subscribing witness.　The special deputy commissioner of excise issued the certificate, and some time thereafter the petitioner commenced this proceeding to cancel it, on the ground that the alleged signature of Silas W. Albertson was a forgery.　The petitioner made no proof except by the testimony of Albertson, who testified that he did not sign the application or consent; that he would not sign any such paper for anybody, anywhere, to sell liquor in this country or in any country; that no one approached him, or asked him to sign it, to his recollection; and added: "I think it would hardly be possible without my recollecting it, but still it might be; it is possible, barely so.　I think I should have remembered it, but I am sure I would not sign it.　I would almost as soon sign my death warrant."　He also testified that he was a prohibitionist, and had been for 40 years.　On cross-examination he testified that he did not recollect ever seeing Jackson, the subscribing witness, or of his calling upon him; would not say that he did not, or that when Jackson asked him to sign the paper he did not tell him what it was, or that he first refused to sign it, and then said:　"I may do it."　He also stated:　"It is possible that he might have asked me, and I might have forgot it."　He admitted that the signature

71 N.Y.S.—32

looked like his, and signed his name twice in court at the request of the appellant's attorney, who offered these signatures, as well as the disputed signature, in evidence. The testimony of this witness was not corroborated in any circumstance, but was contradicted in every particular by Jackson, the subscribing witness, who testified to the details and incidents of his trip to Albertson's residence; that Albertson was at dinner; that he at first refused to sign, saying he was opposed to anything like it, but, after being argued with, said:

"'Well, I'll sign it.' He took me into another room; an outside, vestibule room. He had his desk there, right by the window, facing the road. He took a pen, and signed it in my presence. I told him I was very much obliged to him, and would never forget his kindness."

The rule is that he who has the affirmative must determine it by a fair preponderance of proof, otherwise he fails to make out his case. Remembering this well-settled doctrine, we are of opinion, after a careful consideration of the evidence in the case, that we should reverse the findings of the learned trial court on the question of fact submitted to him, on the ground that it was against the clear preponderance of evidence. In Losee v. Morey, 57 Barb. 561, it was held that where the plaintiff and defendant are sworn, and contradict each other directly upon a question of fact, and their testimony is wholly irreconcilable, in the absence of other testimony the case will stand evenly balanced, and the complaint will be dismissed. Syms v. Vyse, 2 N. Y. St. Rep. 106; Raines v. Totman, 64 How. Prac. 493. The record in this case does not disclose an evenly balanced case, and the testimony of Albertson is far from satisfactory. He admitted that the disputed signature looked like his, but insisted that it was not his signature, because he was a prohibitionist, and had been for 40 years, and would not sign such a paper. Opposed to this testimony was the minute and circumstantial testimony of the subscribing witness, which is supported by the comparison of the disputed signature with the signatures made in court for that purpose. Such comparison shows plainly that the signature to the consent is genuine. It corresponds with the admitted signature in formation, the slant of the letters, and in general appearance. The only variation between the disputed and the admitted signatures can be accounted for by difference in pen, ink, position of the writer, or by different conditions under which they were written. It is a circumstance worthy of note that the two signatures made in court differ more than the disputed and either of the other signatures. There is some diversity in the marks of the pen, the size of the letters, and the space occupied by the signature, but no man ever signed his name with invariable uniformity in the ordinary course of writing it. It would require a vast amount of credulity to believe that these signatures were not written by the same person, and we are therefore constrained to believe that the owner of the property signed the consent, as testified to by the subscribing witness. The order must therefore be reversed, and the proceeding dismissed, with costs. All concur.