SHERRY v. PROAL.

(Supreme Court, Appellate Division, First Department. April 24, 1908.)

1. LANDLORD AND TENANT—RENT—ACTIONS—EVIDENCE—SUFFICIENCY—AGREEMENT TO LEASE.

In an action for rent of rooms claimed to have been rented by defendant for one year, the evidence examined, and *held* insufficient to sustain a verdict for plaintiff on the theory that he agreed to rent the rooms.

2. EVIDENCE—WEIGHT OF EVIDENCE—PREPONDERANCE—SUPPORT OF CIRCUMSTANCES.

Where the testimony of the two parties to a case is evenly balanced, it is the duty of the trial court, in determining the question of fact, to consider the corroborative circumstances and facts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 2450.]

Clarke, J., dissenting.

Appeal from Trial Term.

Action by Louis Sherry against Arthur B. Proal. From a judgment for plaintiff, and an order denying a motion for a new trial, defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, CLARKE, and SCOTT, JJ.

Morgan J. O'Brien, for appellant.
Franklin Bien, for respondent.

INGRAHAM, J. This action was brought to recover for two quarterly payments due October 1, 1906, and January 1, 1907, as rent of an apartment in the building known as "Louis Sherry's," located at Fifth avenue and Forty-Fourth street, in the city of New York. The complaint alleges that the plaintiff is the landlord of the building known as "Louis Sherry's"; that during the year ending September 30, 1906, the defendant occupied and was in possession of a suite of rooms in said building under the terms of a written lease, dated July 18, 1901, a copy of which was annexed to the complaint; that in the

month of July, 1906, the plaintiff and the defendant entered into an agreement whereby the plaintiff hired and leased to the defendant, and the defendant hired and leased from the plaintiff, the said suite of rooms that the defendant had theretofore occupied and was then occupying under said lease of 1901 for a further term of one year from October 1, 1906, at the yearly rental or sum of $14,000, payable quarterly in advance, said letting and taking being upon the same terms and conditions in the then unexpired written lease of the premises, a copy of which was annexed to the complaint, except that it was agreed that such further term should be for one year only, commencing October 1, 1906, without the privilege of any renewal thereof, and except that the annual rental was due to be $14,000, instead of $10,500.

There is no allegation that the defendant occupied these premises, and the right to recover depends entirely upon the proof of the agreement alleged. The written lease executed in 1901 described the particular apartments and the numbers of the rooms to be occupied, was for one year, with a privilege of renewal for the four succeeding years, and the rent was payable quarterly in advance. The answer was a denial of the leasing. Upon the trial the plaintiff was called as a witness. He testified that in the month of March, 1906, he contemplated certain changes in the premises, and that he then saw the defendant and had a conversation with him. He was then asked to state what that conversation was, which was objected to, as not within the issues of the plaintiff's complaint and the bill of particulars. This objection was overruled, and the defendant excepted. The plaintiff then testified that the defendant came to his office in March and said that he was going to Europe, that his lease expired in October, and that it was a question as to whether he should renew his lease or buy a house from Mr. Farley; that the plaintiff stated, "We will try and arrange it," and that they then talked terms; that they spoke about the amount of rental, and the plaintiff said he would think it over and let defendant know the next day; that on the next day he again saw the defendant; that the defendant said that he wanted the lease on the same conditions that he had always had it, a lease for one year with options for the remaining years, which the plaintiff refused, stating that he would give one, two, or three years, as many as the defendant liked, but not an option; that the defendant then said that he would take it for five years, and asked the plaintiff to draw up the leases; that the plaintiff drew up the leases and sent them to the defendant's apartment; that the defendant left for Europe without signing the leases, and the plaintiff left for Europe before the defendant returned. Flauraud was called for the plaintiff and testified: That he was the plaintiff's manager. That after the defendant returned from Europe, about July 10th, defendant had an interview with the witness at which he said that he did not like the lease proposed by the plaintiff; that he wanted it made according to the old lease, wanted the option to take for five years, one year at a time, at the rent of $14,000. That Flauraud said that he could not do that, that the thing had been settled with Mr. Sherry, and that the defendant asked him to do something that it was not proper for him to do, and it would

not be looking after Mr. Sherry's interest. That the defendant then said: "I will tell you what you do. Give me the lease for one year"— and the witness said, "I can do that," and the defendant then said: "That is all right. I will take it for one year at the new rate. Send me down copies of a new lease." The witness said: "Mr. Proal, you have got those copies down to the office. Just cross off the five years, and put one year to it, and send me up a copy"—and that was all that happened. The witness then testified, in answer to leading questions, that he believed the terms were the same terms as the old lease, although he had before testified to all that had happened and said nothing about the terms; that the apartments had been vacant ever since that time. No one else had occupied them. Upon cross-examination he testified that his memory was not good; that he was not certain about the date; that the plaintiff came back from Europe in August; that on July 24th he received a letter from the defendant, stating that the alterations which had been made in the building seriously and adversely affected the apartment then occupied by him, and that the defendant had, therefore, in conformity with the wishes of Mrs. Proal, decided not to renew his lease, but, on the contrary, had purchased a house in which they would move that fall; that the unexpected changes had made the apartment very much less valuable than even the present rental. No answer was sent to that letter, and there was no notice to the defendant that the plaintiff claimed that the apartment had been taken for à year.

Plaintiff then rested, and the defendant was called and testified: That he had an interview with the plaintiff in March, 1906, at which the plaintiff demanded an increase of the rent to $14,000 a year. That the defendant insisted that the rent should be reduced, instead of increased. That the plaintiff stated that he intended to make some alterations in the apartments by putting some extra windows on the same floor, but that it would in no way affect or injure the premises that he had occupied. The plaintiff positively declined to give the defendant a lease for less than $14,000, and the defendant finally said that he would take it for five years, with the understanding that the place should be just the same and just as desirable and advantageous, and with that the interview ended. That he went to Europe, and returned on the 30th of June or the 1st of July. That he saw Flauraud about the 15th or 20th of July. That he told Flauraud that he had thought over the matter of the lease very seriously, and that it did not suit him. That the obligation was too great, the rent was too high, and the term too long, and he had decided not to take it. That he was thinking of buying a house, and the defendant said: "I want to do what is fair and right, and if you will make this lease for one year I will take it, and defer the buying of a house." That Flauraud said: "It is impossible for me to change the terms of that lease as prepared by Mr. Sherry. He is absolute in that matter. I have no authority to change it. He has made that lease with you for five years, and it is beyond my power to make it for any less. I am very sorry, but that I have no power to do it and have to decline." That the defendant said: "Mr. Flauraud, you must decide now, because this house is still in the market, and it suits my wife and suits me, and if I do not take this place for one year

I will proceed to buy that property. Therefore you must decide to-day." That Flauraud said: "'Mr. Proal, it is all over. I cannot change it. You will have to see Mr. Sherry, and Mr. Sherry is in Europe.' I said, 'Very well,' and he said, 'I cannot change the terms of that lease.' I said, 'Mr. Flauraud, all right, then I won't take it at all, and I shall immediately go to Mr. Farley and buy his house.' He said, 'I am very sorry to lose you, but I cannot help it.'" That he had never received the proposed lease for five years, and heard nothing more from the plaintiff or his manager until his receipt on September 29th of a bill for the rent of the apartment for the month of October. The defendant having rested, Flauraud was recalled, and testified that the defendant said that he was willing to take it for a year upon the old terms and upon the increased rental, but that he had to know at once; that the witness told the defendant that he could have it.

To prove this leasing it must not only be established that the plaintiff's representative understood that the defendant was to have the premises for a year, but that the defendant agreed to take them for a year, so that the minds of the parties met, and that a present agreement was then entered into by which the plaintiff rented to the defendant, and the defendant rented from the plaintiff, the apartment for that term. The plaintiff's representative said that the defendant wanted a new written lease. Accepting his testimony, it is quite clear that the signing of a formal lease was contemplated. What the defendant said was that the plaintiff's representative could give him a lease for one year, and the plaintiff's representative said, "I can do that," and the defendant said: "That is all right. I will take it for one year at the new rate. Send me down the copies of a new lease" —to which the plaintiff's representative said: "You have got those copies down to the office. Just cross off the five years, and put one year to it, and send me up a copy." If the defendant had the leases for five years executed by the plaintiff, it would have been improper for him to change the terms of that lease by making it one year, instead of five, without express authority from the plaintiff. Taking the plaintiff's evidence as it stands, there would seem to have been rather a tentative agreement for a lease to be subsequently executed than a present executed lease. The property to be leased was a matter of inference. The defendant made an offer to lease for one year, with an option for four years, based upon the former lease, under which the defendant had accepted the premises, and the plaintiff's representative refused to accept upon the ground that he could not change the agreement that the plaintiff had made. Just why he could change the terms by making it one year, instead of one year with an option, is not apparent, and it is quite evident, from the subsequent action of the parties, that neither understood that there was an absolute lease of the property for a year, as was evidenced by the letter of July 24th, written by the defendant, giving the plaintiff notice that he had decided not to renew his lease, and the receipt of that letter by the plaintiff's representative, without any protest or answer until the 1st of October. The plaintiff returned from Europe early in August. This letter was then upon his desk, but he made no protest or statement of any kind to the defendant that there had been a lease agreed upon by which the

defendant was bound. It is hardly possible that, if the plaintiff had understood that the defendant was bound to occupy the apartment and pay for it for a year, either he or his manager would not have so informed the defendant so that he could have understood the situation. It is undisputed that the defendant had occupied the premises for eight years, always under written leases, and the plaintiff had testified that when the tentative arrangement was made in March leases were at once sent to the defendant to be executed. The plaintiff's manager testified that defendant asked that a lease be sent to him, and it is extremely improbable that, if the arrangement had then been made, the plaintiff's manager would not have taken measures to procure the execution of a written lease. We have the testimony of the plaintiff's manager, from which the inference is claimed that the defendant then agreed to lease the property for a year. We have an absolute denial by the defendant that such an agreement was made. We have a letter, written a few days after, by the defendant to the plaintiff, entirely inconsistent with his having made any such agreement, or that there was an understanding that such an agreement had been made. We have it acquiesced in by the plaintiff and his manager for several months. In the meantime the defendant had removed from the premises, dismantled his apartment, without a word from the plaintiff that there had been any agreement made, and with the additional fact that although, according to the plaintiff's testimony, the defendant had asked for a written lease, no such lease had been furnished and no demand had ever been made that the defendant should execute such a lease.

As I view it, the contemporary acts of the parties strongly corroborated the defendant's testimony and are entirely inconsistent with the claim made by the plaintiff; and the only question is whether a verdict in favor of the plaintiff should be reversed as against the weight of evidence. The duty of a trial court, in determining a question of fact, where the case depends upon the testimony of two parties to the action, is stated in Losee v. Morey, 57 Barb. 562, a case that has been frequently cited with approval. There, both of the parties were examined as witnesses, and the evidence given by them was in direct conflict. Both were men of fair character, standing alike unimpeached, and of equal credibility; and Judge Bockes, who at Special Term had to determine the question of fact, stated the rule as follows:

"Did the case rest here, on their testimony only, the complaint should be dismissed. The plaintiff, in that event, would have failed to show a case of such undoubted fairness and perfect integrity as would entitle him to a decree in his favor. The case would then stand evenly balanced, in which event the plaintiff must fail in his action."

And the evidence was then examined, and it was found that the surrounding circumstances corroborated the plaintiff's case, and upon this corroboration the fact was found in favor of the plaintiff, in consequence of this corroboration, as the other conclusion would be against the clear weight of evidence.

In Lummas v. Van Dyke, 17 App. Div. 621, 45 N. Y. Supp. 489, the Appellate Division of the Second Department cited this case as the correct rule, and held that where the plaintiff's testimony depend-

ed upon the uncorroborated testimony of one person, whose testimony was impeached by evidence that he had testified differently in another case, a decree in the plaintiff's favor was unwarranted, and should be reversed as against the weight of evidence; and in Matter of Whittaker, 63 App. Div. 442, 71 N. Y. Supp. 497, the same rule was applied, the court saying: "The record in this case does not disclose an evenly balanced case, and the testimony of Albertson is far from satisfactory"—and there the final order was reversed, and the proceeding dismissed, upon the ground that the determination below was against the weight of evidence.

The general rule, however, is not at all in doubt. It is the duty of this court to examine the record in each case, and where it clearly appears that the verdict was wrong, and so clearly against the weight of evidence that the jury must have been misled by something that does not appear from the record, it is the duty of this court to grant a new trial, so that the case can be submitted to another jury; and I think there is here presented such a case.

It follows that the judgment and the order denying a motion for a new trial should be reversed, and a new trial granted, with costs to the defendant to abide the event.

McLAUGHLIN, HOUGHTON, and SCOTT, JJ., concur.

CLARKE, J. (dissenting). I dissent. The case presents, as it seems to me, a pure question of fact. The appellant claims that whether or not the agreement for a lease for a year was made in July is controverted by one witness upon each side, who flatly contradicted each other; that these witnesses are each unimpeached, and of equally good character, and worthy of belief, so far as the record shows; and that therefore the plaintiff must be held not to have sustained the burden of proof. Each side invokes the support of the letter of July 24, 1906, written by the defendant to the plaintiff some days after the interview. That letter is as follows:

"The alteration you are making on the fourth floor of No. 524 seriously and adversely affects the apartment now occupied by me. This, together with the changes in the ball room lastly made, also make the apartment disadvantageous. I have therefore, in conformity with the wishes of Mrs. Proal, decided not to renew my lease, and, on the contrary, purchased a house in which we shall move this fall. The details of the moving, etc., will be looked after by Mrs. Proal. The unexpected changes made by you, in my judgment, have made your apartment very much less valuable than even the present rental. I am sorry you thought otherwise, and placed such a high figure thereon for the future. I shall look back at my eight years in Sherry's and the many kindnesses received at your hands with pleasure, and trust that you may find a much better tenant than I have been."

The plaintiff relies upon this letter, upon the ground that if the facts are, as defendant testified, that Flauraud had absolutely refused to make a lease for one year, and that thereupon defendant had said: "I won't take it at all. I shall immediately go to Mr. Farley and buy his house"—that that was the end of the whole transaction, and it was utterly unnecessary to write this letter, stating that defendant had decided not to renew his lease. Secondly, that the letter bears evidence

that the decision of the defendant was based, not upon the refusal of Flauraud to give him a year's lease, but upon the opposition of the defendant's wife to changes that were being made in the apartments. On the other hand, the defendant relies upon this letter upon the ground that it is written proof that he did not make the lease, because it was a contemporaneous writing and distinctly notifies the plaintiff that he would not renew the lease and had purchased a house.

It seems to me clear that the inferences to be drawn from that letter, under the circumstances of this case, were clearly for the jury. If they drew the inferences desired by the plaintiff, then it cannot be said that the verdict was against the weight of evidence. That they did so is proved by the verdict. I cannot avoid the conclusion that upon this sharp dispute of fact the determination of the case depends upon the decision of 12 men. In order to set aside this verdict we must be able to say that it was clearly against the weight of evidence.

As in my opinion we cannot say that, it follows that the judgment should be affirmed, with costs to the respondent.